IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **00-cv-1077-JLK**

**UNITED STATES OF AMERICA, ex rel, ALI BAHRANI,**

    Plaintiffs,

v.

**CONAGRA, INC.,
CONAGRA HIDE DIVISION,
CONAGRA BEEF COMPANIES, and
MONFORT, INC.,**

    Defendants.

---

## ORDER RE SCIENTER STANDARD

Kane, J.

Because the issue of scienter – specifically, the scienter standard necessary to prove a reverse false claim under 31 U.S.C. § 3729(a)(7) – has been so contentious during the run up to the trial on Relator's hide export certificate claims, I issue the following written ruling setting forth my reasons for adopting the standard to be reflected in the jury instructions for trial. I note that I have already expressed my views on the matter from the bench at the August 27, 2008 trial preparation conference. *See* Tr. (Doc. 377) at pp. 4 - 6 (construing the FCA's provisions defining "knowingly" for purposes of liability under the Act and finding *Allison Engine* unnecessary to the determination that § 3729(a)(7) "does, indeed, have a scienter requirement"). Given the likelihood that this ruling will be revisited on appeal, I expand upon it, in writing, below.

Relator's reverse false claim theory of liability in this case is that Conagra, through its employees and over a period of years, avoided obligations to seek and to pay for replacement hide export certificates by making changes directly to original certificates over a USDA inspector's signature. Because, as the Tenth Circuit has held, there is no statutory or regulatory provision requiring exporters to seek and to pay for replacement "*every time* a change to an existing certificate is made," *U.S. ex rel. Bahrani v. Conagra et al.*, 465 F.3d 1189, 1199 (10th Cir. 2006)(emphasis original), the failure to obtain a replacement certificate is actionable in this case only where the changes were sufficiently "material" as to trigger a § 3729(a)(7) "obligation" to secure a replacement. *See id.* at 1200. Accordingly, the Tenth Circuit's holding and the applicable law of the case is that, where a change to a particular certificate is "major or significant," Conagra's "alleged failure to obtain new certificates . . . constituted the avoiding of an 'obligation' under § 3729(a)(7)." *Id.*

The Relator takes issue with the significance of the Tenth Circuit's holding for law of the case purposes and urges me to confine it to the state of the record as it existed in the original appeal. I pause briefly to address Relator's position and reiterate my basis for rejecting it.

The Tenth Circuit's "materiality" requirement and its distinction between "major" and "minor" changes reflects the distinction, inherent in administrative law generally and the False Claims Act as a specific subset thereof, between the violation of an administrative rule or regulation on the one hand and *fraud* on the other. The False

2

Claims Act is a fraud statute. *Bahrani*, 465 F.3d at 1194. Section 3729(a)(7) is but one of the Act's several "litigation tools" by which the government, or a relator standing in the shoes of the government, pursues *fraud*.[1] For this reason, the Act does not cover the failure to pay obligations that arise only by virtue of the allegedly wrongful act itself, such as a penalty or fine or disciplinary action for falsifying documents or, here, for making changes to a hide export certificate. The Act covers *fraud*, i.e., actions aimed at deceiving the government into paying out monies it does not owe, or actions aimed at avoiding or concealing from the government obligations to pay monies that are owed. *See Bahrani*, 465 F.3d at 1202-03 (citing *Bahrani*, 338 F. Supp.2d at 1207; *Am. Textile Mfrs.*, 190 F.3d at 738-41 and *Q Int'l*, 131 F.3d at 773). This does not mean that altering an export certificate is not unlawful or improper under applicable rules and regulations; it means that altering an export certificate, without more, is not fraudulent within the purview of the FCA.

As the Tenth Circuit stated, fees for replacement certificates are best characterized as user fees, not penalties. *Id.* at 1203. Because "[t]hey must be paid in limited circumstances," they are "distinguishable from the general obligation to comply with statutes and regulations outside the scope of § 3729(a)(7)." *Id.* Accordingly, testimony

---

[1] Congress originally passed the False Claims Act to "combat rampant fraud in Civil War defense contracts." *Bahrani* at 1194. It was amended in 1999 to "cover[] all fraudulent attempts to cause the Government to pay out sums of money" and to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." *Id.* One of the new "litigative tools" enacted in 1999 to counter the "growing pervasiveness of fraud" was § 3729(a)(7), the reverse false claims provision at issue here. *Id.*

3

that the USDA prohibits exporters from making "any" kinds of changes to certificates or subjects them to administrative action or penalties for doing so is both unremarkable and immaterial to the standards for proving a reverse false claim under § 3729(a)(7):

> Although an exporter's making such minor changes to a certificate might subject it to potential fines and penalties for altering a government certificate [statutory citations omitted], *these potential fines and penalties are not § 3729(a)(7) obligations*.

*Bahrani*, at 1199-1200 (emphasis mine)(citing cases and Relator's brief in the first appeal at 38-39, where he "acknowledg[es] that the statutes that establish penalties for impermissibly altering or using altered certificates do not themselves establish § 3729(a)(7) obligations"). Because only the making of a "major or significant" change to an export certificate triggers a § 3729(a)(7) obligation for purposes of FCA liability, Dr. Bowling's testimony that there is no such thing as a "minor" or authorized change under the USDA regulatory scheme does not justify a change in the Tenth Circuit's reasoning or the law of the case.

This brings us to scienter and the state of mind necessary for the act of making a "major or significant" change to an export certificate without securing a replacement certificate fraudulent under § 3729(a)(7).

Section 3729(a)(7) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." Relator argues the "knowingly" requirement relates solely to the relative truth or falsity of the "false record

4

or statement," i.e., an original certificate with a change overwriting an inspector's signature (even if that "change" was actually to correct an error or omission in the original certificate, not to falsify any fact or representation in it). Because the government "is out its $20" regardless of what the employee knew or didn't know about having to obtain a replacement certificate, *see* Tr. (Doc. 418) at 32-33, Relator maintains all that is required to prove fraud under § 3729(a)(7) is that the employee "knew" he or she was making a change over an inspector's signature. Other than a possible defense of somnambulance or other unconscious means of certificate-changing, Relator's position regarding scienter is that there is no meaningful scienter requirement at all: An exporter is strictly liable for fraud every time an employee makes a "major or significant" (or, according to Relator, even a "minor") change to an export certificate. Relator's position is not tenable.

Applying the language of § 3729(a)(7) and the definition of "knowingly" found in § 3729(b), liability for a reverse false claim under the Act in this case requires Relator to prove that a Conagra employee made a "major or significant" change to a certificate, without getting a replacement certificate, under circumstances where that employee "knew" the change he or she was making required the securing of a replacement certificate, or knew "major or significant" changes required the securing of a replacement certificate but was either "deliberately ignorant" of whether the particular change made fell into that category, or was "recklessly indifferent" to that fact. The jury will be instructed consistent with the Tenth Circuit's statement at pages 1202-03 of its opinion

that it is not the *act* of changing a certificate that is wrongful by itself, but the decision to do so when the employee knew (or was deliberately ignorant or recklessly indifferent to the fact that) he or she was supposed to get a replacement instead.

> [I]t is not Conagra employees' making of corrections on the original export certificates that creates the obligation to pay the fee . . . [but] the determination that the original certificate contains a major or significant error or omission and that an 'in lieu of' or replacement certificate and payment of the accompanying fee are necessary. *It is the discovery that these changes are necessary that creates the obligation. In our view, the circumstances are analogous to a motorist who attempts to avoid an annual fee by unlawfully altering the expiration date on a license plate. In that instance, it is not the altering of the plate that generates the fee but rather an independent event – the end of the yearly period.*

465 F.3d at 1202-03 (emphasis mine). Despite Relator's objection at the February 13 trial preparation conference regarding potential "confusion" in the description of the employee's actions as "correcting" an error or omission in an original certificate rather than "changing" an original certificate, the instructions may refer to an employee's act of "making a major or significant change to a certificate without securing a replacement" as "discovering a major or significant error or omission in a certificate and correcting it without securing a replacement," if doing so helps clarify for the jury that the salient moment in time for scienter purposes is the moment the employee *discovers* the need for a change and elects either to request a new certificate and pay the associated fee or to avoid doing so.

To summarize, the scienter requirement will be articulated as the act of making a major or significant change (or correction) to a hide export certificate without getting a

6

replacement when the actor either (1) knew at the time he discovered a change was necessary that the change required getting a replacement certificate; (2) knew major or significant changes required replacement certificates but was deliberately ignorant of whether the particular change made fell into that category; or (3) knew major or significant changes required replacement certificates but acted in reckless disregard of whether the change fell into that category. I apply this standard out of an abundance of caution and am aware that *Allison Engine* may support the imposition of a higher (specific intent) level of scienter for reverse false claims under the Act. However, it will be for the Tenth Circuit to hold Mr. Bahrani to this higher standard, not me.

Dated February 17, 2009.            **s/John L. Kane**
                                                            SENIOR U.S. DISTRICT JUDGE