IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 00-cv-01077-JLK-KLM

UNITED STATES OF AMERICA, ex rel., ALI BAHRANI,

      Plaintiff,

v.

CONAGRA, INC.,
CONAGRA HIDE DIVISION,
CONAGRA BEEF COMPANY, and
MONFORT, INC.,

      Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Relator [Ali Bahrani's] Motion for Award of Attorneys' Fees, Costs and Expenses** [Docket No. 482; Filed April 20, 2000] (the "Motion") pursuant to Federal Rule of Civil Procedure 54(d)(2) and 31 U.S.C. § 3730(d). Defendants filed their Response to the Motion on May 8, 2009 [Docket No. 492], which included a Cross Motion for Fees and Costs. At the instruction of the court clerk, Defendants filed a separate **Cross Motion for Attorneys' Fees and Costs Relating to the Meats Portion of the Case** [Docket No. 495; Filed May 11, 2009] (the "Cross Motion") on May 11, 2009. Relator filed a Reply [Docket No. 511] in support of his Motion, then submitted a joint Motion to Strike and Response to Defendants' Cross Motion [Docket No. 512] on May 27, 2009. The following day, May 28, 2009, Relator filed a Supplement to his Response to Defendants' Cross Motion [Docket No. 516] explaining that he was not

seeking to strike Defendants' Cross Motion.  Finally, Defendants filed their Reply in support of their Cross Motion [Docket No. 519] on June 10, 2009.

Accordingly, Relator's Motion and Defendants' Cross Motion have been fully briefed and are ripe for resolution.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1(C)(3), the Motions have been referred to this Court for recommendation.  The Court has reviewed the parties' filings, the relevant law, the case record and is sufficiently advised in the premises.  For the reasons set forth below, the Court **RECOMMENDS** that Relator's Motion [#482] be **GRANTED in part**.  The Court further **RECOMMENDS** that Defendants' Cross Motion [#495] be **DENIED**.

## I.  Statement of the Case

### A.    Factual Background

In his Complaint, filed nine years ago, Ali Bahrani (the "Relator") alleged that Defendants Conagra, Inc., Conagra Hide Division, Conagra Beef Companies, and Monfort, Inc. (collectively "Defendants") violated the reverse false claims provision of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(G), by altering up to two hundred (200) meat and hide export certificates per week beginning in 1991 without obtaining replacement or "in lieu of" certificates from the United States government (the "government").  *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194 (10th Cir. 2006).  The government provides Defendants with meat and hide export certificates through the Food Safety and Inspection Service and the Animal Plant Health Inspection Safety Service, charging either a flat fee for each certificate or a fee based on the time expended by inspectors to generate information beyond the minimum required by law.  *Id.* at 1192-93.

Relator alleged that Defendants defrauded the government of its replacement certificate fees on up to one hundred and four thousand (104,000) occasions. *Defendants' Response* [#492] at 1.  Based on the FCA's damages and penalties provisions,[1] Relator's allegations, had they proven true, could have resulted in a judgment against Defendants of over one billion dollars.  *Id.*

After nine years of litigation, an appeal to the Tenth Circuit Court of Appeals, a request for writ of certiorari to the United States Supreme Court, and two jury trials,  Relator proved only that Defendants materially altered a total of five (5) hide export certificates out of the more than ten thousand (10,000) certificates which remained at issue following discovery. *Relator's Motion* [#482] at 2.  Relator proved actual damages to the government of only $107.50 and was awarded $27,822.50 on its behalf after the District Court trebled damages and added penalties.  *Defendants' Response* [#492] at 2.

### B.    Procedural Background

The District Court initially dismissed the claim at issue here on Defendants' motion for summary judgment, finding that Defendants were not under any clear obligation to obtain replacement export certificates or to pay fees for such certificates to the government. *Bahrani*, 465 F.3d at 1197.  On appeal, the Tenth Circuit reversed, holding that Defendants had a legal obligation to obtain and pay for replacement export certificates, but only in cases where Defendants made major or significant changes to the original certificates. *Bahrani*, 465 F.3d at 1209.

---

[1]  The FCA establishes a range of penalties, adjustable for inflation, to be assessed against violators.  *See* 31 U.S.C. § 3729(a)(1).  In addition to penalties, treble damages are also assessed against violators.  *Id.*

On remand, the District Court bifurcated the case on Defendants' motion and conducted two trials, one pertaining to meat export certificates and one pertaining to hide export certificates. *See Amended Order for Judgment* [#473] at 1. Specifically, the first trial addressed Relator's approximately nine thousand three hundred twenty-eight (9,328) claims related to meat export certificates, focusing on the threshold jurisdictional issue of whether Relator was an "original source" of the information advanced as the basis for the claims.[2] *Id.* A jury found that Relator was not the original source of the information. Because this finding deprived the Court of jurisdiction, the jury did not reach the merits of Relator's meat export certificate claims. *Id.* The second trial addressed Relator's one thousand fifty-seven (1,057) claims related to hide export certificates. *See Amended Order for Judgment* [#473] at 1. The jury found that Defendants violated the FCA on only five (5) occasions by knowingly making major or significant changes to hide export certificates without obtaining replacement certificates, at a cost of $21.50 each. *Id.* Following the verdict, the District Court awarded Relator treble damages and penalties as described above, but declined to award any fees or costs on the basis that Relator was not a prevailing party pursuant to Federal Rule of Civil Procedure 54. *Id.* at 2-3.

Relator appealed from the final judgment, *Notice of Appeal* [#480],[3] and Defendants filed a cross appeal from the final judgment. *Notice of Cross Appeal* [#485]. Both appeals

---

[2] The FCA forecloses federal jurisdiction in cases based on certain types of publicly disclosed information unless the party bringing the claim is an original source of the information who has direct and personal knowledge of the facts on which the allegations are based. 31 U.S.C. § 3730(e)(4)(A)-(B).

[3] Although Relator purports to appeal the District Court's denial without prejudice of his request for fees pursuant to 31 U.S.C. § 3730(d)(2) [Docket No. 480], both parties concede in their joint appellate brief that their fee requests are a collateral issue pending before the District Court and not an issue on appeal at this time. *See United States ex rel. Bahrani v. Conagra, Inc.*, No. 09-1163 (10th Cir. filed April 17, 2009) [Docket No. 01018071212 at 3-7].

are pending before the Tenth Circuit.

In a motion to alter or amend the District Court's judgment, Relator sought attorneys' fees pursuant to the FCA. *See Order* [#478] at 2. The District Court denied Relator's request without prejudice, ordering Relator to file a formal motion for fees subject to briefing and a hearing, if appropriate. *Id.* Judge Kane remarked in his Order that "the Court's nonbinding predilection" regarding the amount of fees, costs and expenses to which Relator was entitled was "not much." *Id.* On April 20, 2009, Relator filed a timely motion for an award of expenses, attorneys' fees and costs in the amount of $3,449,469.10. *Relator's Motion* [#482] at 1, 11 (citing 31 U.S.C. § 3730(d)(2); Fed. R. Civ. P. 54(d)(2)). Defendants objected to Relator's Motion and filed a Cross Motion for expenses, attorneys' fees and costs related only to the meat export certificates portion of the case in the amount of $1,211,113.97. *Defendants' Response* [#492] at 9, 38 (citing 31 U.S.C. § 3730(d)(4); 28 U.S.C. § 1927).

## II. Analysis

### A. Jurisdiction

The Court retains jurisdiction to review post-judgment motions for attorneys' fees in FCA litigation, even during a pending appeal on the merits of the underlying *qui tam* action, pursuant to 31 U.S.C. § 3730. *Bell v. Bd. of Comm'rs of Jefferson County*, 451 F.3d 1097, 1101 n.2 (10th Cir. 2006).

### B. Relator's Motion

Relator's Motion is brought pursuant to 31 U.S.C. § 3730(d)(2), which states that, in cases where the government declines to intervene in an FCA action, "the person bringing the action . . . shall . . . receive . . . an amount for reasonable expenses which the court

finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." Relator contends that the statute contains a mandatory fee shifting provision which requires the Court to award fees in the event that the party bringing the action achieves any measure of success. *Relator's Motion* [#482] at 5-7. Defendants oppose any award of attorneys' fees, costs or expenses, arguing that Relator "only prevailed on a small and insignificant fraction of his hides claims" and that Relator's fees "are not reasonable given the results obtained, [Relator's] failure to further any purpose of the FCA, and [Relator's] frivolous pursuit of the meat-related claims." *Defendants' Response* [#492] at 9. Initially, the parties' arguments present a question of statutory interpretation.

In all cases of statutory interpretation, the Court's "primary task is to 'determine congressional intent, using traditional tools of statutory construction.'" *United Keetoowah Band of Cherokee Indians v. HUD*, 567 F.3d 1235, 1241 (10th Cir. 2009) (quoting *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 123 (1987)). The Court begins with the plain language of the statute, "assum[ing] that Congress's intent is expressed correctly in the ordinary meaning of the words it employs." *St. Charles Inv. Co. v. Comm'r of Internal Revenue*, 232 F.3d 773, 776 (10th Cir. 2000). "Where the language of the statute is plain, it is improper . . . to consult legislative history in determining congressional intent." *Id.*

### 1.    The Statutory Language

In crafting the fee shifting provisions of the FCA, Congress used the term "shall" to mandate an award of reasonable expenses, attorneys' fees and costs to a person who settles a claim or recovers a civil penalty and damages on behalf of the government. 31 U.S.C. § 3730(d)(2). As Relator notes, the Supreme Court interprets the word "shall" as

6

"[t]he language of command." *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) (citing *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935)).   The Tenth Circuit also recognizes the mandatory nature of the FCA's attorneys' fees provisions for relators.  *See Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 544 (10th Cir. 2000) (stating that the FCA attorneys' fees provisions "are mandatory on their face").   However, the Court notes that Congress substantially qualified the mandatory nature of these provisions by requiring only an award of "*reasonable*" and "*necessarily incurred*" expenses, as well as "*reasonable* attorneys' fees and costs."  31 U.S.C. § 3730(b)(2) (emphasis added).

Defendants claim that Relator is precluded from recovering any fees, costs or expenses because he is not a prevailing party.  *Defendants' Response* [#492] at 9.  I find that the question of whether Relator meets Defendants' definition of a "prevailing party" is irrelevant because the plain language of the FCA authorizes an award of reasonable expenses, attorneys' fees and costs to a relator who brings any successful action pursuant to the FCA on behalf of the government, no matter how small the victory.  *See* 31 U.S.C. § 3730(d)(2).  However, Defendants correctly challenge the reasonableness of Relator's fee request.  Therefore, the question before the Court is not whether Relator prevailed, but what amount of expenses, attorneys' fees and costs, if any, is reasonable.  *Id.*

## 2.    Reasonable Expenses, Attorneys' Fees and Costs

Both parties agree, as does the Court, that the legal standards for evaluating the reasonableness of expenses, fees and costs in this case should be informed by the standards used in cases decided pursuant to a similar fee shifting provision contained in the Civil Rights Act, 42 U.S.C. § 1988(b).  *Defendants' Response* [#492] at 10; *Relator's Reply* [#511] at 5; *see United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1055

(10th Cir. 2004) (citing S. Rep. No. 99-345, at 29 (1986)); *see also Shaw*, 213 F.3d at 544-45 ("We see no reason why the attorney's fees provisions of the FCA should be applied differently than those of the [§ 1988] civil rights laws . . . ."). Accordingly, the Court applies these standards in resolution of Relator's Motion.

The Supreme Court has recognized that, despite the mandatory nature of a fee-shifting provision, given the qualification of reasonableness, a court maintains its discretion when tasked with determining whether to burden a litigant with the expenses and fees of its opponent. *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). In statutes where Congress provides for fee shifting, a victorious plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* at 429 (quoting S. Rep. No. 94-1011, p. 4 (1976) (quoting *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968))). Logically, the amount of fees to be awarded "must be determined on the facts of each case." *Id.* at 429.

While courts commonly use a "lodestar" amount[4] as a starting point for determining reasonable fees, twelve factors – known as the *Johnson* factors – influence the Court's evaluation, including the eighth factor, i.e., "'the amount involved and the result obtained.'" *Id.* at 430-33 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).[5] Indeed, the Supreme Court noted that the result obtained "is particularly crucial

---

[4] The lodestar amount represents "the number of hours reasonably [expended on the litigation] multiplied by the reasonable hourly fee." *Gisbrecht v. Barnhart*, 535 U.S. 789, 789-90 (2002); *see also Hensley*, 461 U.S. at 433.

[5] In *Johnson*, the Fifth Circuit established twelve factors to consider when determining reasonable attorneys' fees:

> (1) the time and labor required; (2) the novelty and difficulty of the questions at issue; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee

where a plaintiff . . . succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434. Where excellent results are obtained, a plaintiff's attorney "should recover a fully compensatory fee"; however, limited success may merit a reduction of the lodestar amount, even in cases where the plaintiff's claims are "interrelated, nonfrivolous, and raised in good faith." *Id.* at 435-36 ("Congress has not authorized an award of fees whenever it is reasonable . . . to bring a lawsuit or [the case was] tried with devotion and skill. Again, the most critical factor is the degree of success obtained.").

Considering an analogous fee shifting provision, the Supreme Court held that a plaintiff achieving a technical or *de minimis* victory may only be eligible to receive minimal fees or, depending on the circumstances, no fees at all. *Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992) (refusing to award fees to plaintiff pursuant to § 1988 in decade-long litigation where the jury awarded plaintiff only one dollar in damages despite his request for $17 million). Thus, courts should give consideration to the amount of damages awarded compared to the amount sought when determining the amount of reasonable attorneys' fees pursuant to the FCA. *See id.* (noting that although "a nominal damages award . . . does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under the [fee-shifting statute]"). After considering the relative amount of damages awarded, courts may dispense with the formalities of reciting the twelve *Johnson* factors and calculating the lodestar figure, and "may lawfully award low or no fees." *Id.* Justice

---

is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717-719).

O'Connor's concurrence in *Farrar* establishes three factors to consider when evaluating a *ae minimis* victory in terms of whether any fees or costs are reasonable. The "relevant indicia of success" include "the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served." *Id.* at 122 (O'Connor, J., concurring).

Tenth Circuit jurisprudence related to the fee shifting provisions of the FCA and § 1988 of the Civil Rights Act mirrors that of the Supreme Court. The Tenth Circuit acknowledges the District Court's discretion to limit attorneys' fees. *Bell*, 451 F.3d at 1104. Further, in a case addressing analogous fee shifting provisions, the Tenth Circuit specifically adopted the three factors outlined by Justice O'Connor in *Farrar* "for assessing a fee request in the context of a nominal damage award." *Id.* (citing *Brandau v. Kansas*, 168 F.3d 1179, 1181 (10th Cir. 1999)). Finally, the Tenth Circuit has also adopted the Supreme Court's position that, in cases where a plaintiff achieves only a technical or *de minimis* victory, "a court may 'lawfully award low fees or no fees' without calculating a lodestar." *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997) (quoting *Farrar*, 506 U.S. at 115).

Beginning with the most critical factor – the degree of success – the Court notes that Relator initially sought substantial damages and penalties based on an estimate of Defendants' allegedly improper practices over a ten-year period. *Defendants' Response* [#492] at 1. The Court acknowledges that lawsuits – and the amount of recoverable damages – may not achieve full definition until the parties have conducted discovery. *Christianburg Garment Co. v. EEOC*, 434 U.S. 421, 422 (1978). However, even after proceeding through discovery, Relator continued to allege that Defendants improperly

altered one thousand fifty-seven (1,057) hide export certificates and approximately nine thousand three hundred twenty-eight (9,328) meat export certificates.   *Defendants'* *Response* [#492] at 6.   Had these claims been successful, they could have resulted in damages and penalties against Defendants of somewhere between $57 million and $115 million.   *See* 31 U.S.C. § 3729(a)(1).   Ultimately, based on jury findings that (1) Relator was not an original source who could pursue the meat export certificate claims and (2) Defendants knowingly altered only five hide export certificates in a legally significant manner,[6] Relator recovered damages and penalties on behalf of the government in the amount of $27,822.50.   *Amended Order for Judgment* [#473] at 3.   The actual damages to the government in this case amounted to a minuscule $107.50.   *See id.* at 2; *Defendants'* *Response* [#492] at 2.   In the words of Justice O'Connor, Relator "may have won a point, but the game, set, and match all went to the defendants."   *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring).

Relator fares no better when the Court considers the other relevant factors set forth by Justice O'Connor.   I find that although Relator prevailed on a legal issue of some significance, i.e., that Defendants significantly altered a very small number of the hide export certificates at issue without paying the government for replacement certificates,[7] this

_____

[6] Conversely, the Court notes that the jury found by a preponderance of the evidence that Defendants did not change *any* certificates "with the intent or purpose of 'concealing, avoiding or decreasing' the obligation to secure and pay for . . . replacement certificate[s]."   *Special Verdict Form* [#470-2] at 2.

[7] The Court notes that Relator's overall success on his FCA claims, considering the meat and hide export certificates together, amounted to less than 0.05% of the approximately 10,385 export certificates at issue following discovery and less than 0.005% of the roughly 104,000 export certificates alleged to have been improperly altered in Relator's Complaint.   The Court calculates these percentages to illustrate the *de minimis* nature of Relator's victory.   *See Hensley*, 461 U.S. at 435 n.11 (rejecting mathematical approach for calculating reasonable attorneys' fees in a case involving the analogous fee shifting provision in § 1988).   "[A] plaintiff who failed to recover [the primary relief requested] may recover a fee award based on all hours reasonably expended *if* the relief obtained *justified that expenditure of*

nearly decade-long litigation has consumed an enormous amount of public and private resources without serving any significant public purpose, such as vindicating civil rights or punishing pervasive illegal conduct.  Relator's "Pyrrhic victory" is simply not the type of triumph for which an award of expenses, attorneys' fees or costs in the amount that he seeks is reasonable.  *See Farrar*, 506 U.S. at 117 (O'Connor, J., concurring).  "Such a [nominal] judgment cannot deter misconduct any more than a bolt of lightning can; its results might be devastating, but it teaches no valuable lessons because it carries no discernable meaning."  *Id.* at 122; *see also Tex. State Teacher's Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (applying analogous § 1988 fee-shifting provision and noting that "a technical victory may be so insignificant . . . as to be insufficient" to award any fees; obtaining a technical victory factors into what, if anything, can be considered reasonable).

Given the special circumstances of this case and the Supreme Court's recognition that "[t]he result is what matters," I conclude that the only reasonable award to Relator is one-third of the amount he ultimately recovered, or $9,274.16.  I base this award on a logical reading of *Farrar* and its progeny.   As discussed earlier, those cases clearly establish the priority of the result obtained in determining the reasonableness of an award of expenses, attorneys' fees or costs.  Those cases further dispense with the formal requirement of applying the *Johnson* factors when a *de minimis* victory is achieved.  In my view, the rationale of the *Farrar* line of cases is that the *Johnson* factors are uninstructive in determining an appropriate award in circumstances like those present here.

---

*attorney time.*"  *Id.* (emphasis added).

12

First, in this case, the only appropriate *objective* measurement of the amount of attorneys' fees to which Relator is entitled is the monetary award he eventually obtained. This is because the other objective measurements expressed or implied in the *Johnson* factors – e.g., attorney time and labor expended, number of hide and meat export certificates challenged, amount of damages sought, length of the proceedings, awards in similar cases – bear no relationship to the result achieved here.   Accordingly, the usefulness of such other objective measurements in determining an award is doubtful.

Second, in this case, the propriety of applying the subjective factors expressed or implied in *Johnson* is equally dubious because of the overwhelmingly insignificant result obtained.  Even if those subjective measurements of a fee award are considered – e.g., the novelty and difficulty of the questions involved, the skill required to bring and try the case, the experience, reputation and ability of the attorneys, the "undesirability" of the case – they are substantially outweighed by the result achieved.  Simply stated, consideration of such subjective factors is especially troubling when the result achieved is negligible and any attorneys' fee award will be paid by the opposing party, who likely incurred significant legal expense in arriving at the same result.

Thus, I conclude that the basis for an award of attorneys' fees, costs and expenses under the FCA in this case must be the amount of the final judgment itself.  That amount, including treble damages and penalties, is $27,822.50. Given the questionable applicability of the remaining *Johnson* factors, as discussed above, I base the award on a standard contingency fee percentage of one-third of the amount recovered.  Contingency fees are a well-accepted method for calculating attorneys' fees in cases where, among other circumstances, a party is unable to bear the anticipated hourly expense of the litigation, the

13

potential range of damages sought or permitted by law is wide, and competent counsel make an informed judgment about the chances of success on the merits of the case.[8]   In light of the well-developed facts and the law applicable to this dispute, use of a standard contingency fee model is instructive.  Accordingly, I respectfully recommend that the Motion be **granted in part**, and that Relator be awarded expenses, attorneys' fees and costs in the amount of one-third of the total recovery, or $9,274.16, pursuant to 31 U.S.C. § 3730(d)(2).[9]

## C.   Defendants' Cross Motion

Defendants' Cross Motion, which is limited to a request for fees pertaining only to the meat export certificates portion of the case, relies on the other fee shifting provision of the FCA.  *Defendants' Response* [#478] at 1, 35-36.  This provision allows the Court, in its discretion, to award reasonable attorneys' fees and expenses to prevailing defendants if the court finds that a relator's claim "was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment."  31 U.S.C. § 3730(d)(4).  However, Defendants' request goes beyond the language of the FCA, as they ask the Court to assess Defendants' award not only against Relator, but also against Relator's counsel pursuant to 28 U.S.C. § 1927.  *Defendants' Response* [#492] at 36-37.  Section 1927 gives the Court discretion to punitively assess expenses, fees and costs against "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . ."  The Court

---

[8]   My knowledge of standard contingency fees is based upon my twenty-two years of civil litigation experience primarily in this Court and the Colorado state courts prior to my appointment to the bench.

[9]   As noted, this award expressly includes expenses and costs as well as attorneys' fees.  I find that no separate consideration of expenses is necessary or appropriate in light of the result obtained. *See* 31 U.S.C. § 3730(d)(2).  This Recommendation is not intended to and does not alter the District Court's determination that Relator is not a prevailing party for purposes of Fed. R. Civ. P. 54(d), and that he therefore is not entitled to an award of costs pursuant to that Rule. *Order* [#473] at 3.

considers these requests independently.

The Court notes at the outset that to the extent that Relator raises a challenge to the timeliness of Defendants' Cross Motion, I do not consider it, for two reasons. First, the District Court specifically extended Relator's deadline for filing a motion related to expenses, costs and fees. *Order* [#478] at 2-3. Defendants filed their Response and Cross Motion, which was conditioned upon Relator's Motion, within the deadline set by the District Court. *Defendants' Response* [#492] at 41. Second, Defendants' Cross Motion for fees pursuant to 28 U.S.C. § 1927 is specifically exempt from the time constraints that govern other fees requests. Fed. R. Civ. P. 54(d)(2)(E).

## 1.     The FCA

As noted above, the standards applied to fee shifting provisions of 42 U.S.C. § 1988 are instructive when considering similar provisions within the FCA. *Grynberg*, 389 F.3d at 1055 (citing S. Rep. No. 99-345, at 29 (1986)) ("[T]he [FCA's] legislative history suggests that the standard of § 3730(d)(4) is analogous to that used for claims for attorney fees brought under 42 U.S.C. § 1988."). In determining whether an action brought pursuant to the FCA is clearly frivolous, vexatious or brought primarily for the purpose of harassment, the Court "review[s] the entire course of the litigation." *Id.* at 1059 (citing *Christianburg*, 434 U.S. at 421-22). Here, I have reviewed the decisions of the District Court and the Tenth Circuit together with the relevant docket in this case. In considering Defendants' Cross Motion, the Court is "not . . . asked to continue to consider the merits of the underlying *qui tam* case," but rather to "determine whether [the] lawsuit was or became clearly frivolous or vexatious." *Id.* at 1057. Accordingly, the Tenth Circuit has instructed that the proper legal standard is the one articulated by the Supreme Court in *Christianburg*:

15

> [t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees . . . . [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so . . . .

*Id.* at 1058 (quoting *Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000)). As acknowledged by the Tenth Circuit, the *Christianburg* standard "is 'a difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff.'" *Id.* at 1059 (quoting *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1203 (10th Cir.2000)).

Applying the *Christianburg* standard to Relator's meat export certificate claims only, I conclude that they did not rise to the level necessary to justify an award of fees to Defendant. Relator lost his meat export certificate claims because a jury found that he was not an original source of the underlying information, a condition required by the FCA to confer jurisdiction on the District Court. *Amended Order for Judgment* [#473] at 1; *see also* 31 U.S.C. § 3730(e)(4)(A)-(B). However, prior to the jury trial, the Tenth Circuit acknowledged that Relator had "submitted sufficient evidence to support his contention that he [was] an original source . . . to the extent that [his] allegations [were] based upon personal observations." *Bahrani*, 465 F.3d at 1209. This finding allowed Relator to survive summary judgment, effectively establishing Relator's original source status as an issue of material fact to be decided at trial. *Id.* On remand, the jury chose not to credit Relator's observations. However, the jury's perception of Relator's credibility does not translate to a dispositive assessment of his veracity or the merit of his claims. *See Kettering v. Harris*, No. 06-cv-01989-CMA-KLM, 2009 WL 1766805, at *5-6 (D. Colo. June 18, 2009) (unpublished decision) (refuting defendants' argument that, because court discredited

16

plaintiff's testimony, plaintiff was guilty of intentionally and repeatedly perjuring himself).

The history of the meat export certificates portion of this case suggests that Relator's claims, while ultimately unsuccessful, were not clearly frivolous, unreasonable or groundless. *See id.* at *5; *Grynberg v. Praxair, Inc.*, 183 Fed. Appx. 724, 731-33 (10th Cir. 2006) (unpublished decision) (refusing to grant attorneys' fees to defendants in an FCA case where plaintiff was found not to be an original source of the information underlying the claims). Accordingly, Defendants' arguments fail to satisfy the difficult *Christianburg* standard.

## 2.    28 U.S.C. § 1927

Like the *Christianburg* standard, the standard for imposing sanctions of expenses, attorneys' fees and costs against a party's counsel pursuant to 28 U.S.C. § 1927 is a difficult one to meet. *See Braley v. Campbell*, 832 F.2d 1504, 1511-12 (10th Cir. 1987). An attorney becomes subject to § 1927 sanctions when he or she "acts recklessly or with indifference to the law" or "when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006) (citations omitted).

In the case at bar, the law was unsettled. The District Court and the Tenth Circuit each arrived at different conclusions regarding Defendants' obligation to obtain replacement export certificates. *Bahrani*, 465 F.3d at 1197, 1209. Further, Relator survived summary judgment on the jurisdictional issue pertaining to his original source status. *Id.* at 1209. While surviving summary judgment is not determinative of the decision whether to assess sanctions, the Court cannot conclude that Relator's counsel acted

recklessly or with indifference to the law, acted without a plausible basis or pursued an unwarranted course of action simply because their client's claims were ultimately unsuccessful at trial. *See EEOC v. Tandem Computers, Inc.*, 158 F.R.D. 224, 228-29 (D. Mass. 1994) (citations omitted) (crediting plaintiff's success on preliminary challenges as grounds to find that litigation was not frivolous or vexatious). Nor does the record support a conclusion that Relator's counsel were cavalier, bent on misleading the court or that they acted in bad faith. Thus, I conclude that sanctions against Relator's counsel pursuant to 28 U.S.C. § 1927 would be unwarranted.

### III.  Conclusion

As set forth above, I respectfully **RECOMMEND** that Relator's Motion [#482] be **GRANTED in part**, pursuant to 31 U.S.C. § 3730(d)(2), and that Relator be awarded expenses, attorneys' fees and costs in the amount of $9,274.16.

I further **RECOMMEND** that Defendants' Cross Motion [#495] be **DENIED**, pursuant to 31 U.S.C. § 3730(d)(4) and 28 U.S.C. § 1927.

IT IS FURTHER **ORDERED** that pursuant to Federal Rule of Civil Procedure 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review

by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  July 29, 2009

                                        BY THE COURT:

                                        s/ Kristen L. Mix
                                        U.S. Magistrate Judge